UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CARRUTHA C. TICHENOR,<br><br>        Plaintiff,<br><br>        v.<br><br>CAROLYN W. COLVIN Acting<br>Commissioner of the Social Security<br>Administration,<br><br>        Defendant. | Case No. 1:13-cv-01996-TWP-TAB |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Carrutha C. Tichenor ("Ms. Tichenor") requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her applications for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), and for Social Security Supplemental Income ("SSI") under Title XVI of the Act.[1] For the reasons set forth below, the Court **AFFIRMS** the Commissioner's decision.

### I.    BACKGROUND

**A.    Procedural History**

Ms. Tichenor filed applications for DIB and SSI on November 16, 2010, alleging a disability onset date of September 30, 2008. The claim was denied initially and upon reconsideration, and she requested a hearing on May 10, 2011. On March 13, 2012, a hearing was held before Administrative Law Judge T. Whitaker (the "ALJ"). The ALJ issued a decision on

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits or Supplemental Security Income. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted decisions.

July 27, 2012, finding that Ms. Tichenor was not disabled from her alleged onset date through the date of the ALJ's decision. On October 22, 2013, the Appeals Council denied Ms. Tichenor's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.

**B.    Factual Background**

Ms. Tichenor was 49 years old on the date of the ALJ's decision and 45 years old on her alleged disability onset date. She has past work experience as a cashier, deli clerk, and mail sorter. Ms. Tichenor alleges disability due to back and leg pain, depression and anxiety.

**1.    Back and leg pain medical evidence**

Ms. Tichenor initially complained of leg and back pain in May 2009. She was examined by Dr. Mark Fakhoury, M.D., who found that Ms. Tichenor was neurologically intact and had full range of motion in her lumbar spine. She was referred to physical therapy but reported that it did not help. In January 2010, Ms. Tichenor complained of severe back pain, but her examination showed normal sensation and negative straight leg raising test. A March 2010 MRI of Ms. Tichenor's lumbar spine showed mild S-shaped thoracolumbar scoliosis and multilevel lumbar spine degenerative changes without evidence of focal disc herniation, nerve root impingement, or significant spinal stenosis.

In May 2010, Ms. Tichenor complained of back, knee, and hip pain. An examination showed mild knee crepitus, and a knee x-ray found no acute radiographic abnormalities. A spine x-ray showed mild scoliosis of her low back, and a hip x-ray showed no significant degenerative changes of the hips. A November 2010 MRI showed no changes from the May 2010 findings. A November 2010 EMG of Ms. Tichenor's left leg and right arm showed no electrodiagnostic evidence of compression neuropathy involving the left leg or right arm.

On January 6, 2011, Ms. Tichenor underwent an evaluation for back pain and scoliosis with Dr. Nina Dereska, M.D. ("Dr. Dereska"), a consultative examiner. Ms. Tichenor reported that she had been injured at work by a falling object in 2005, with resulting worsening lumbar spine pain which radiated to the left buttock and left lateral thigh. Dr. Dereska's examination of Ms. Tichenor's mid and low back showed no muscle spasms, no tenderness to palpation, and no apparent kyphosis or obvious scoliosis. She had mildly decreased flexion of the lumbosacral spine, causing moderate pain. Ms. Tichenor's straight leg raise was positive on the left and negative on the right. She had intact sensation; normal reflexes; and normal motor strength with the exception of mildly decreased strength in her left hip flexion and left knee extension. Examination of Ms. Tichenor's hips, knees, elbows, wrists, and shoulders were within normal range of motion, although hip mobility caused moderate distress due to back pain. Dr. Dereska concluded that numerous prior evaluations had all been normal with no obvious etiology of her back pain, and opined that scoliosis was not a typical condition that would result in back or leg pain unless the scoliosis was severe.

In February 2012, Ms. Tichenor's primary care physician, Dr. Elizabeth Cobbs, M.D. ("Dr. Cobbs"), completed a functional evaluation based upon her diagnosis of scoliosis of fifteen degrees with radicular back pain. Dr. Cobbs opined that Ms. Tichenor was unable to perform any lifting, bending, stooping, prolonged or brief sitting or standing, pulling or pushing. Further, she concluded that Ms. Tichenor could sit for thirty minutes and could stand and walk in combination for thirty minutes in an eight hour work day. Her lifting and carrying were limited to five pounds, and she could not push or pull arm controls. Dr. Cobbs also prescribed Ms. Tichenor with a cane to assist her with walking.

### 2. Depression and anxiety medical evidence

In March 2011, Ms. Tichenor was treated at her primary care clinic for depression. She reported having sleep problems, feelings of isolation, loss of interest, and poor memory and concentration due to depression. Ms. Tichenor was prescribed Celexa and referred to a social worker to treat her depression. Later that month, Ms. Tichenor saw her primary care physician, Dr. Cobbs, who instructed her to continue taking Celexa for her depression. However, Ms. Tichenor did not take her medication as prescribed.

In April 2011, Ms. Tichenor was diagnosed by social worker James Brummett ("Mr. Brummett") with a mood disorder due to her back and depressive disorder, not otherwise specified. Mr. Brummett assigned her a Global Assessment of Functioning ("GAF") score of 45, indicating serious symptoms. Mr. Brummett noted in a May 2011 examination record that Ms. Tichenor's mental status was essentially within normal limits other than her mood being slightly down with some anxiety. He noted that her treatment would be brief and solution focused. Ms. Tichenor was treated by a psychotherapist from March 2011 to January 2012. Additional facts will be addressed below as necessary.

## II. DISABILITY AND STANDARD OF REVIEW

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment (i.e. one that significantly limits her ability to perform basic work activities) that meets the durational requirement, she is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the ALJ determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii). In order to determine steps four and five, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), which is the "maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or

that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III. THE ALJ'S DECISION

As an initial matter, the ALJ found that Ms. Tichenor met the insured status requirements of the Act through September 30, 2013, for purposes of DIB. At step one, the ALJ found that Ms. Tichenor had not engaged in substantial gainful activity since September 30, 2008, her alleged onset date. At step two, the ALJ found that Ms. Tichenor had the following severe impairments: chronic back pain and radiculopathy, levoscoliosis, lumbar facet degenerative disc disease, history of knee pain, history of shoulder pain, insomnia, history of cervical sprain and back pain with sciatica, history of left arm pain, chronic pelvic pain and ovarian cysts, history of hip pain, left shoulder sprain, mood disorder, anxiety, and depression. At step three, the ALJ found that Ms. Tichenor does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ concluded that Ms. Tichenor has the residual functional capacity to perform sedentary work with the following restrictions: sit and stand each for one-half hour at one time; walk one-half block at one time; never do pushing/pulling of hand or arm controls; never operate foot

controls; never climb ladders, ropes, scaffolds or stairs; occasionally climb a ramp and balance; occasionally stoop, but never repetitively stoop below the waist; never do crouching, kneeling or crawling; never perform overhead reaching; avoid concentrated exposure to extreme cold, heat, wetness or humidity; avoid concentrated exposure to irritants, such as fumes, odors, dusts or gases; avoid all exposure to unprotected heights or moving machinery; work limited to simple, routine and repetitive tasks in a work environment free of any fast-paced production requirements; and, during or after February 2012, limited to work that allows her to use a cane to ambulate. At step four, the ALJ determined that Ms. Tichenor is unable to perform any of her past relevant work. At step five, the ALJ found that considering Ms. Tichenor's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform, concluding that she is not disabled as defined by the Act.

## IV. ANALYSIS

Ms. Tichenor argues that the ALJ erred at step three in her determination that she was not disabled by her combined anxiety, depression, and scoliosis with radicular back pain; by failing to summon a medical advisor to testify regarding medical equivalence to listings 1.04 (spine) or 12.04 (depression, anxiety); by making an improper credibility determination contrary to Social Security Ruling 96-7p; and in determining Ms. Tichenor's RFC at step five. For each of her arguments, Ms. Tichenor alleges that the ALJ failed to consider evidence supporting a finding of disability, including her GAF scores and Dr. Dereska's and Dr. Cobbs's functional assessments. She also argues that the agency's review physicians did not consider all of the evidence in the record, and thus could not be relied upon by the ALJ.

**A.	Step Three Analysis**

Ms. Tichenor argues that the ALJ ignored or rejected evidence proving her disability at step three.  She claims that the ALJ rejected the functional evaluation by her treating physician, Dr. Cobbs, and refused to consider her prescribed cane for ambulation as evidence of disability.  She also alleges that the ALJ improperly rejected Dr. Dereska's conclusion that she could not perform sedentary level work.  Ms. Tichenor further argues that the ALJ rejected her GAF score of 45 as evidence of her disability.

Generally, an ALJ must give the medical opinions of a claimant's treating physician controlling weight.  "A treating physician's opinion regarding an applicant's physical restrictions is entitled to controlling weight if it is well supported by objective medical evidence and consistent with other substantial evidence in the record."  *Collins v. Astrue*, 324 F. App'x 516, 520 (7th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004)).  When an ALJ does not give a treating source's opinion controlling weight, she must consider the following factors: (1) the examining relationship; (2) the treatment relationship; (3) whether the opinion is supported by relevant evidence; (4) consistency of the opinion with the record as a whole; (5) the treating source's specialization; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527(c); *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008).

The ALJ found that Dr. Cobbs's functional assessment was not supported by objective medical evidence and was not consistent with other substantial evidence in the record, and thus was entitled to little weight.  The ALJ stated that Dr. Cobbs provided no analysis, rationale or indication of what she reviewed to reach her conclusions, and her treatment notes fail to document any examination findings to support her conclusions.  (Filing No. 13-2, at ECF p. 19.)  However,

8

Ms. Tichenor does not cite to any evidence overlooked by the ALJ that contradicts these findings or that would support Dr. Cobbs's functional assessment. Because Dr. Cobbs's opinion was not supported by objective medical evidence, including her own treatment notes, the ALJ was not required to give the opinion controlling weight.

With respect to evidence that Ms. Tichenor required a cane to walk beginning in February 2012, she does not indicate how this is evidence that she met the requirements of a listed impairment or otherwise proves her alleged disability. As noted by the ALJ in evaluating Ms. Tichenor's scoliosis, "[w]here there is impaired ambulation, evaluation of equivalence may be made by reference to 14.09A," and the ALJ also considered the criteria of Listing 1.04.[2] (Filing No. 13-2, at ECF pp. 12-13.) The ALJ found that the evidence does not support a conclusion that Ms. Tichenor is unable to ambulate effectively as required by Listing 1.04C. The inability to ambulate effectively is defined in 1.00B(2)(b) as "having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.00B(2)(b)(1). Ms. Tichenor does not indicate how her use of a cane satisfies this requirement. Therefore, the Court finds that the ALJ gave proper consideration to Ms. Tichenor's use of a cane for walking.

Ms. Tichenor argues that the ALJ improperly rejected evidence from Dr. Dereska, the consultative examiner, stating that Ms. Tichenor could not perform work at the sedentary level. The ALJ addressed Dr. Dereska's opinion and gave it some weight based upon Dr. Dereska's own findings that Ms. Tichenor's scoliosis was mild and would not be expected to produce pain unless it was severe. (Filing No. 13-2, at ECF p. 19.) Contrary to Ms. Tichenor's assertion, the ALJ did not find that there was no objective evidence of her back pain, only that her pain does not rise to

---

[2] Both listings refer to 1.00B(2)(b) for the definition of "inability to ambulate effectively."

9

the level of disabling. The ALJ correctly states, "[t]o be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." (Filing No. 13-2, at ECF p. 20) (citing *Stucky v. Sullivan*, 881 F.2d 506, 509 (7th Cir. 1989)). Evidence of Ms. Tichenor's pain does not require a finding of disability by the ALJ. (Filing No. 13-2, at ECF p. 20) ("[D]isabilty requires more than just the inability to work without pain.").

The ALJ also concluded that Dr. Dereska's opinion that Ms. Tichenor could only sit for ten to fifteen minutes was contradicted by Ms. Tichenor's own testimony, in which she stated that she could sit for one-half hour and walk one-half block. (Filing No. 13-2, at ECF p. 19.) The ALJ also explicitly addressed Ms. Tichenor's positive straight leg raise during her consultative examination by Dr. Dereska, finding that a later straight leg raise test following an automobile accident in October 2011 was negative. (Filing No. 13-2, at ECF p. 18.) The Court concludes that the ALJ properly considered Dr. Dereska's medical opinions and gave them the appropriate weight.

Finally, Ms. Tichenor argues that the ALJ improperly failed to consider her GAF score of 45, which she alleges supports a finding of disability. The ALJ discussed Ms. Tichenor's GAF score, finding that it does not support a conclusion of disability because it is a "clinician's judgment of the individual's overall level of functioning" and is "intended to be used to make treatment decisions." (Filing No. 13-2, at ECF p. 19) (citing American Psychiatric Ass'n: *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition, Text Revision 32 (2000)). While an ALJ may consider GAF scores as evidence supporting a finding of disability, "nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (quoting *Wilkins v. Barnhart*, 69 Fed. App'x. 775, 780 (7th Cir. 2003)). This correct legal standard was

also cited by the ALJ in her opinion. (Filing No. 13-2, at ECF pp. 19-20.) Thus, the Court finds that the ALJ properly considered Ms. Tichenor's GAF score, and this evidence alone does not require a finding of disability.

B. **Failure to Summon a Medical Advisor**

Next, Ms. Tichenor argues that the ALJ should have summoned a medical advisor to testify regarding the issue of medical equivalency because the state agency physicians did not consider all of the medical records, thus the ALJ could not rely upon their findings with respect to medical equivalence. An ALJ is not required to seek the opinion of additional medical experts, and the decision to summon a medical expert is discretionary. *See* 20 C.F.R. § 416.927(e)(2)(iii); *see also Scheck*, 357 F.3d at 700 (concluding that Disability Determination and Transmittal ("DDT") forms conclusively establish that a physician designated by the Commissioner has given consideration to medical equivalence). While the DDT forms did pre-date some of the medical evidence in the record, an ALJ is required to obtain an updated opinion of a medical expert only when "additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the [impairment] is not equivalent in severity to any impairment in the Listing of Impairments." *Graves v. Astrue*, No. 1:11-CV-249-SEB-DKL, 2012 WL 4019533, at *3 (S.D. Ind. Sept. 11, 2012) (quoting SSR 96–6p).

The ALJ explicitly addressed the fact that "the State Agency physicians did not have the benefit of the most recent medical source statements, current medical records, or the hearing testimony." (Filing No. 13-2, at ECF p. 20.) The ALJ found that their reports generally support the conclusions stated in the opinion, and to the degree the conclusions of the medical consultants' opinions differed from the ALJ's, they were accorded little weight because the opinions were based

11

on only part of the evidence of record. (Filing No. 13-2, at ECF p. 20.) Ms. Tichenor does not identify any evidence in the subsequently dated medical records that would have changed the ALJ's findings, as the Court has already addressed why the ALJ properly rejected the GAF score and the functional capacity assessments as evidence of disability. Thus, the Court concludes that the ALJ was not required to summon an additional medical advisor to testify regarding medical equivalence.

C.      **Credibility Determination**

Ms. Tichenor argues that the ALJ's credibility determination is patently erroneous and is contrary to Social Security Ruling 96-7p. She asserts that the ALJ did not articulate any legitimate reason for her credibly determination, and argues it is contrary to the medical and psychological evidence proving that she is disabled. However, the ALJ did list and consider all of the factors set forth in SSR 96-7p in great detail. (Filing No. 13-2, at ECF pp. 16-17.) Ms. Tichenor also alleges that the ALJ failed to consider factor two of SSR 96-7p, which is the "location, duration, frequency, and intensity of the individual's pain or other symptoms;" however, the ALJ explicitly references and devotes an entire paragraph of her opinion discussing this factor, and supports her findings with substantial evidence. (Filing No. 13-2, at ECF p. 16.)

The evidence that Ms. Tichenor claims the ALJ improperly rejected is the same evidence used to support her previous arguments. As discussed above, Ms. Tichenor's GAF score, her use of a cane, and Dr. Dereska's and Dr. Cobbs's functional assessments were properly considered by the ALJ and do not corroborate her allegations of total disability. The Court finds that the ALJ adequately supported her conclusion regarding Ms. Tichenor's credibility determination and satisfied the requirements of SSR 96-7p.

**D.     Step Five/RFC Determination**

Finally, Ms. Tichenor argues that substantial evidence fails to support the ALJ's step five determination because her RFC finding did not accurately describe and account for Ms. Tichenor's impairments. Specifically, Ms. Tichenor argues that the ALJ failed to account for her pain, depression and anxiety, and GAF assessment, as well as the ALJ's finding that she had moderate impairment in concentration, persistence or pace. Contrary to Ms. Tichenor's arguments, the ALJ explicitly addressed each of her impairments and discussed how each impacted her RFC. (Filing No. 13-2, at ECF p. 18.) The ALJ did account for Ms. Tichenor's pain, stating that:

> never operating foot controls accommodates her leg complaints and back pain. The postural limitations in my assessment . . . [are] designed to accommodate the claimant's back, knee, shoulder, and pelvic pain. The prohibition against climbing . . . [and] avoid[ing] all exposure to unprotected heights and moving machinery is designed . . . to accommodate the claimant's pain . . . .

(Filing No. 13-2, at ECF p. 18.) The ALJ also considered Ms. Tichenor's mental impairments by "limiting the claimant to simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements." (Filing No. 13-2, at ECF p. 18.) Ms. Tichenor misquotes the ALJ's opinion by claiming that the ALJ only accounted for her mental impairments with a reference to "unskilled work;" nowhere is this term used on the page referenced by Ms. Tichenor or anywhere else in the ALJ's opinion. (Filing No. 13-2, at ECF p. 15.) The Court finds that the ALJ addressed, in detail, the impact of Ms. Tichenor's pain and mental limitations in formulating her RFC, and has therefore supported her step five determination with substantial evidence.

**V.     CONCLUSION**

For the reasons set forth above, the Court finds that the ALJ adequately supported her conclusions with substantial evidence and did not commit reversible error. Therefore, the decision of the Commissioner is **AFFIRMED**, and Ms. Tichenor's appeal is **DISMISSED**.

**SO ORDERED.**

Date: 3/30/2015

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov